Dear Messrs Harroun and LeBlanc:
Our office has received opinion requests from each of you dealing with subjects dealt with in our Opinion Number 91-589 relative to Bayou Lafourche Fresh Water District. We combined those requests and respond as follows with this supplemental opinion. The Legislative Auditors' request will be answered first.
1. Your first question asks if it is permissible for board members to be reimbursed for meals occurring immediately after the monthly board meetings, semi-annual safety meetings and other occasions. You indicate that some of the meals are attended by individuals not employed by the district, such as councilmen, members of local levee boards and employees of DOTD. You further ask if board members may receive per diem and mileage payments on these occasions.
As you suggest, these questions were largely answered in Opinion Number 91-589 as follows: absent statutory authorization, the payment of or reimbursement for meals from public funds is improper. The prohibition extends to board members and others, with the board being responsible. If the meal sites were in-parish, mileage payment is not authorized. Per diem payment for meals is, in our opinion, improper as being outside the scope of the "everyday they are in the service of the parish" phrase in LSA R.S. 33:1233(2)(a) and also inconsistent with our reasoning in Opinion Number 91-589 and should not be allowed in the future.
2. You state that during 1987, 1988 and 1989, the district gave $25.00 gift certificates to its employees as a Christmas gift and ask if this is permissible.
It is not permitted in that the gift violates Article 7 Section 14 of the Louisiana Constitution of 1974 as a prohibited donation of a thing of value by a political subdivision to a private person. We note here that the Board, by resolution — dated December 17, 1991, agreed not to contribute to any private organization — or become a member of such organization with public funds, or give gift certificates to employees.
3. In 1988 and 1989 district funds were used to defray the cost of Christmas parties, $450.00 and $150.00 respectively and you ask if this is permitted.
Again, in our opinion, such a private use of public funds would be prohibited by Art. 7 Sec. 14 La. Const. 1974.
4. You next state that each of the board members has a life insurance policy paid for by the district, with the member's wives being beneficiaries and ask if this is authorized. We also note that this practice ceased on October 9, 1991 as a result of board action.
LSA R.S. 42:821 authorizes the purchase of certain group life insurance contracts for state employees, school employees and other enumerated groups. Members of the Board of the Fresh Water District are not included. LSA R.S. 42:821 (A)(1)(6) limits the governmental contribution to fifty (50%) per cent of total premium costs. LSA R.S. 33:5151
authorizes the purchase of and the payment of one half (1/2) of the cost of "group insurance covering hospitalization, and retirement" but no mention is made of life insurance. Therefore, the purchase was improper.
5. Your final question — deals with the district's contract of employment with its attorneys and you ask, in essence, if a contract calling for a monthly retainer is proper, in other words, must the contract call for the payment of services solely by the hour. You state that the last contract between the Board and its attorney called for the payment of $560.00 per month for an estimated twelve hours of work per month. We note that the last contract in existence, reflecting the above terms was approved by the Department of Civil Service on October 16, 1990. This contract calls for the payment of approximately $47.00 per hour for the board's attorney. We find no statute prohibiting a political subdivision of the state from entering into such a contract but advise against the practice.
In our opinion numbered 78-124 we stated, "if the attorney is not working full time in the clerk's office, he should be paid only on a per hour basis for work actually performed." The hourly contract certainly is the preferred practice: for the flat rate contract to be lawful and not violate Art. 7 Sec. 14 of the La. Const. 1974, payments should not be made prior to the work being performed, the work must be actually performed every month. For the above reasons we decline to label the contract in question as per se improper.
Mr. LeBlanc's question is as follows:
1. May the Lafourche Parish Fresh Water District fund a water study proposed to be conducted by scientists from Louisiana State University through the Louisiana Geological Survey. The estimated cost is $95,000.00 or 17% of the district's annual budget.
In our opinion the above expenditure would be unauthorized as outside the scope of the District's enabling legislation, Act 113 of 1950. We are further informed that an ad valorem tax proposition from which these funds would come, states that the purpose of the tax is that of "paying the maintenance and operating expenses of the District's water facilities" (Legislative auditor's letter, April 15, 1992.) The study is outside of the scope of the tax proposition also.
2. In your last question you ask if the District may make a $2,500.00 donation to the "North Lafourche Revitalization District", a political subdivision created by Act 592 of 1990. You state that the agency was created to "promote and encourage commercial and industrial development and re-development, to stimulate the economy . . . and to utilize and develop human and other resources."
In our opinion this donation is outside of the scope of the District's authority and as such would be prohibited by La. Const. Art. 7 Sec. 14. The District could engage in a "Cooperative Endeavor" with the "Revitalization District" as long as the services and equipment used were within the scope of the District's enabling legislation.
We hope the foregoing has been helpful to both of your inquiries and remain,
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: JAMES M. ROSS Assistant Attorney General
RPI/JMR:vrr